UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

GENEO BROWN,

                              Plaintiff,

        v.

DEPARTMENT OF CORRECTIONAL SERVICES,
NYS OFFICE OF MENTAL HEALTH,
BRIAN FISCHER, Commissioner,
LUCIEN J.  LeCLAIRE, Dep. Com. of Corr.,
DAVID NAPOLI, Superintendent Southport C.F.,
MARSHAL TRABOUT, R.M.D.,
MARILYN BRIDGE, DSA of Southport C.F.,
DR.  JOSEPH HALUSKA,
J.  ANTONSEN, Dep.  Supt. of Health Services,
HENDERSON, N.A.,
DAVID CHAPMAN, Corr. Sgt.,
C.O. GILBOY,
CORR.  OFFICER DEBURGOMASTER, and
ESCROW, Hearing Officer,

                              Defendants.

**DECISION**
**and**
**ORDER**

**09-CV-00949S(F)**

_____

APPEARANCES:         GENEO BROWN, *Pro Se*
                        97-A-0463
                        Great Meadow Correctional Facility
                        Box 51
                        Comstock, New York 12821-0051

                        ERIC T. SCHNEIDERMAN
                        Attorney General, State of New York
                        Attorney for Defendants
                        KIM S. MURPHY
                        Assistant New York Attorney General, of Counsel
                        Main Place Tower
                        Suite 300A
                        350 Main Street
                        Buffalo, NY 14202

## JURISDICTION

This case was referred to the undersigned by Honorable William M.  Skretny on

July 19, 2010, for all nondispositive pretrial matters.  The matter is presently before the

court on Plaintiff's motions to amend the Complaint (Doc. No. 33), filed October 12,

2010, and to compel discover (Doc. No. 50), filed February 3, 2011.

## BACKGROUND

Plaintiff Geneo Brown ("Plaintiff" or "Brown"), proceeding *pro se*, commenced

this civil rights action on November 4, 2009, while incarcerated at Shawangunk

Correctional Facility ("Shawangunk").  Defendants to this action include New York State

Department of Correctional Services ("DOCS"), New York State Office of Mental Health

("OMH"), and various current or former DOCS employees, including DOCS

Commissioner Brian Fischer ("Fischer"), DOCS Deputy Commissioner Lucien J.

LeClaire ("LeClaire"), Southport Correctional Facility ("Southport") Superintendent David

Napoli ("Napoli"), DOCS Regional Medical Director Marshal Trabout, M.D. ("Dr.

Trabout"), Southport Deputy Superintendent of Administration Marilyn Bridge ("Bridge"),

Joseph Haluska, M.D. ("Dr. Haluska"), Deputy Superintendent of Health Services J.

Antonsen ("Antonsen"), Nursing Administrator Henderson ("Henderson"), Correctional

Sergeant David Chapman ("Chapman"), Correctional Officer ("C.O.") Gilboy ("Gilboy"),

C.O. Deburgomaster ("Deburgomaster"), and Hearing Officer Esgrow ("Esgrow")[1]

(together, "Defendants").  All Defendants have been served and have appeared in this

---

[1] Plaintiff misspells Esgrow's name in the Complaint as "Escrow."

action.

Plaintiff asserts four claims for relief alleging violations of his constitutional rights including violations of 42 U.S.C. §§ 1983, 1985, 1986, the First Amendment right to seek redress of grievances and to exercise his religion, the Eighth Amendment right to be free from cruel and unusual punishment, denial of due process under the Fifth and Fourteenth Amendments, and conspiracy to deny Plaintiff equal protection.  An order filed March 25, 2010 (Doc. No. 3) ("March 25, 2010 Order"), dismissed with prejudice that portion of Plaintiff's First Claim alleging the filing of a false misbehavior report by Chapman, Deburgomaster, and Gilboy, Plaintiff's claims for monetary damages against the individual defendants in their official capacities, that portion of Plaintiff's Fourth Claim against DOCS and OMH under 42 U.S.C. § 1985-1986, and all claims alleging violations of Plaintiff's First Amendment right to free exercise of his religion and violations of the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc ("RLUIPA").  March 25, 2010 Order at 19.

On October 12, 2010, Plaintiff filed a motion to amend the Complaint (Doc. No. 33) ("Plaintiff's Motion to Amend"), supported by the attached Affirmation/Affidavit in Support of Motion (Fed.R.Civ.P. § 15(a)) ("Plaintiff's Affirmation Supporting Amendment"), and a copy of the proposed Amended Complaint (Doc. No. 33-1) ("Proposed Amended Complaint").  Plaintiff seeks to amend the Complaint to add four claims for relief, including (1) Defendants withheld from Plaintiff good time credits to retaliate against Plaintiff, in violation of the First and Fourteenth Amendments ("Proposed Fifth Claim"); (2) common law tort claims for assault and battery, abuse of process, medical malpractice, negligence, and fraud ("Proposed Sixth Claim"); (3)

religious discrimination based on interference with Plaintiff's kosher diet in violation of the First, Fourth, Eighth, and Fourteenth Amendments and 42 U.S.C. § 1981 ("Proposed Seventh Claim"); and (4) conspiracy to have Plaintiff force-fed, in violation of 42 U.S.C. §§ 1981, 1983, 1985, and 1986 ("Proposed Eighth Claim").  On December 2, 2010, Defendants filed Defendants' Memorandum of Law in Opposition to Plaintiff's Motion to Amend (Doc. No. 40) ("Defendants' Memorandum Opposing Amendment"). In further support of Plaintiff's Motion to Amend, Plaintiff filed on December 20, 2010, Plaintiff's Reply to Defendants Response Memorandum of Law in Opposition (Doc. No. 45) ("Plaintiff's Reply Supporting Amendment"), with exhibits A through F ("Plaintiff's Amendment Exh(s). __").

On February 3, 2011, Plaintiff filed a motion to compel (Doc. No. 50) ("Plaintiff's Motion to Compel"), supported by the attached Affidavit in Support of Motion to Compel (Fed.R.Civ.P. 37) ("Plaintiff's Affidavit Supporting Discovery"), and exhibits ("Plaintiff's Discovery Exhibits").  On February 23, 2011, Defendants filed in opposition to Plaintiff's Motion to compel the Declaration of Assistant Attorney General Kim S. Murphy (Doc. No.  59) ("Murphy Declaration"), with attached exhibits A and B (Murphy Declaration Exh(s). __").  On March 7, 2011, Plaintiff filed in further support of Plaintiff's Motion to Compel Plaintiff's Reply Affirmation (Doc. No. 62) ("Plaintiff's Reply Supporting Discovery").  Oral argument was deemed unnecessary.

Based on the following, Plaintiff's motion to amend is DENIED in part and GRANTED in part; Plaintiff's motion to compel is DISMISSED as moot in part, GRANTED in part, and decision is RESERVED in part.

# FACTS[2]

On November 9, 2007, Plaintiff was transferred from Auburn Correctional Facility to Southport Correctional Facility ("Southport" or "the correctional facility").  After being processed at Southport, Plaintiff was provided with a jumpsuit into which Plaintiff was to change and then report to OMH.  According to Plaintiff, when he complained that the jumpsuit was too small and requested a larger size, Defendants Chapman, Deburgomaster, and Gilboy assaulted Plaintiff and then subjected Plaintiff to a false misbehavior report in connection with the assault ("the misbehavior report").  Plaintiff maintains that after the November 9, 2007 incident, he was placed on B-Block, 3 Company, 1 cell, where Plaintiff was denied meals, prompting Plaintiff to declare himself on a hunger strike on November 13, 2007.  On November 16, 2007, Plaintiff prepared a statement declaring his reasons for the hunger strike, including the alleged November 9, 2007 assault, threats by corrections officers, and the filing of the misbehavior report.

On November 19, 2007, Plaintiff was interviewed by Defendants Deputy Superintendent of Administration Bridge and a psychologist regarding Plaintiff's hunger strike, transferred to the correctional facility's infirmary, and served with an order to show cause and petition filed by Defendant Southport Superintendent Napoli in state court seeking an order allowing DOCS to force-feed Plaintiff and to allow Plaintiff's blood to be drawn for testing to ascertain whether a proper level of electrolytes was maintained throughout Plaintiff's hunger strike.  The order to show cause was

---

[2] Taken from the pleadings and motion papers filed in this action.

5

supported by affidavits prepared by Defendants Napoli, Dr. Haluska, DOCS Regional

Medical Director Dr. Trabout, and Bridge. Plaintiff maintains the order to show cause

was filed to retaliate against Plaintiff for filing inmate grievances and for exercising his

religion, and that Plaintiff was not necessarily on a "hunger strike," but was fasting to

protest Defendants' alleged deprivation of his religious rights.

On November 29, 2007, Plaintiff attended a hearing on the order to show cause

in state court ("Show Cause Hearing"), subsequent to which an order ("the court order")

was issued permitting DOCS to force-feed Plaintiff. In accordance with DOCS Directive

# 4309, Defendants DOCS Commissioner Fischer, and Deputy DOCS Commissioner

LeClaire were provided with regular updates regarding the force-feeding of Plaintiff. On

December 6, 2007, Plaintiff agreed to eat and to allow his blood to be drawn and tested

by DOCS medical staff to ascertain the electrolytes level, and Plaintiff was released

from the infirmary.

On December 27, 2007, Plaintiff was again transferred to the correctional

facility's infirmary and held in isolation where Plaintiff maintains he was subjected to

repeated harassment by the medical staff, including unnecessary monitoring of

Plaintiff's weight and vital signs which was permitted under the court order, but which

Plaintiff asserts was not then necessary because Plaintiff had discontinued his hunger

strike and resumed eating. Plaintiff maintains the transfer back to the infirmary was

intended to isolate and separate Plaintiff from his legal work and to retaliate against

Plaintiff for commencing another legal action.

On March 19, 2008, Plaintiff filed inmate grievance # SPT-43500-08 ("the Inmate

Grievance"), complaining that the toilet, water, and lights in Plaintiff's prison cell had not

functioned since March 14, 2008, that he was assaulted by several unidentified corrections officers on January 18, 2008 while returning from the shower to his cell, and that on January 28, 2008, while Plaintiff was showering, Defendant Chapman made verbal threats to Plaintiff regarding a written complaint made by Plaintiff pertaining to the January 18, 2008 assault.  On March 21, 2008, Defendant Chapman moved Plaintiff to a different area of the correctional facility, a move which Plaintiff maintains was to retaliate against Plaintiff for filing the Inmate Grievance on March 19, 2008. Plaintiff maintains that while being escorted to his new cell, he was assaulted by Chapman and several other corrections officers.

On April 24, 2008, to protest the January 18, 2008 assault, the January 28, 2008 threat, the five-day deprivation of a toilet, water and lights in his cell, and the March 21, 2008 assault, Plaintiff commenced a second hunger strike and was transferred to the infirmary where Plaintiff was force-fed.  Plaintiff explained to Defendant Bridge, DOCS medical staff and OMH staff that Plaintiff's hunger-strike was actually a religious expression of fasting to protest the alleged assaults and mistreatment, and that he voluntarily consumed water, but the force-feeding continued.  On August 6, 2008, Plaintiff was transferred to University Hospital in Syracuse for insertion of a "PEG tube"[3] pursuant to a request by Dr. Trabout.  On August 7, 2008, Plaintiff was transferred to Walsh Regional Medical Unit ("Walsh RMU"), at Mohawk Correctional Facility in Rome, New York, where he was force-fed through the PEG tube until August 11, 2008, when Plaintiff was re-assigned to Kosher (Alternative) Meal Status and discontinued his

---

[3] A percutaneous endoscopic gastronomy tube or "PEG tube" is a tube inserted through the skin, guided and placed with the aid of a camera, into the stomach to permit feeding.

hunger strike, but remained in Walsh RMU.

On August 20, 2008, the physician who inserted Plaintiff's PEG tube refused to remove it, but stated he would reconsider whether to remove Plaintiff's PEG tube in four months.  Plaintiff complained that he was being denied his Kosher Cold Alternative Diet ("CAD") meals and, on December 15, 2008, Defendant Nurse Administrator Henderson spoke with Plaintiff about the alleged denial of his CAD meals.  Plaintiff filed a grievance regarding the denial of his CAD meals, which was denied.  Despite the fact that Plaintiff did not engage in any further hunger strikes after resuming eating on August 11, 2008, Plaintiff remained at Walsh RMU until April or May 2009, when the PEG tube was removed and Plaintiff was transferred to Shawangunk Correctional Facility on May 20, 2009.

## DISCUSSION

1.    **Motion to Amend**

Plaintiff seeks to amend the Complaint to add four claims for relief, including (1) Defendants withheld from Plaintiff good time credits to retaliate against Plaintiff, in violation of the First and Fourteenth Amendments ("Proposed Fifth Claim"); (2) common law tort claims for assault and battery, abuse of process, medical malpractice, negligence, and fraud ("Proposed Sixth Claim"); (3) religious discrimination based on interference with Plaintiff's kosher diet in violation of the First, Fourth, Eighth, and Fourteenth Amendments and 42 U.S.C. § 1981 ("Proposed Seventh Claim"); and (4) conspiracy to have Plaintiff force-fed, in violation of 42 U.S.C. §§ 1981, 1985, and 1986 ("Proposed Eighth Claim").  Defendants maintain the four proposed new claims should

be denied as futile.  Defendant's Memorandum Opposing Amendment at 3.

Fed.R.Civ.P. 15 provides that leave to amend a pleading "shall be freely granted when justice so requires."  An amended complaint may be filed pursuant to Fed.R.Civ.P. 15(a) where the new allegations do not unduly prejudice an opponent, are not the result of undue delay or bad faith, and are not futile.  *Foman v. Davis*, 371 U.S. 178, 181 (1962).  Absent a showing that significant additional discovery burdens will be incurred or that the trial of the matter will be significantly delayed, amendment should be permitted.  *Block v. First Blood Associates,* 988 F. 2d 344, 350 (2d Cir. 1993).

Where a requested pleading amendment is futile, "it is not an abuse of discretion to deny leave to amend" to the moving party.  *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir.1993).  *See Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 18 (2d Cir. 1997) ("Leave to amend need not be granted . . . where the proposed amendment would be futile.") (internal citation and quotation marks omitted).  A determination that a proposed claim is futile is made under the same standards that govern a motion to dismiss under Rule 12(b)(6).  *A.V. By Versace, Inc. v. Gianni Versace, S.p.A.*, 160 F.Supp.2d 657, 666 (S.D.N.Y.2001).   "A proposed amendment to a pleading would be futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6)."  *Oneida Indian Nation of New York v. City of Sherrill*, 337 F.3d 139, 168 (2d Cir. 2003).  *See Jones v. New York Div. of Military & Naval Affairs*, 166 F.3d 45, 55 (2d Cir. 1999) (holding an amendment is futile "if the proposed amended complaint would be subject to 'immediate dismissal' for failure to state a claim or on some other ground.").

Further, although a motion to amend a complaint brought pursuant to Fed. R.

Civ. P. 15(a) provides that leave to file an amended complaint "shall be freely given,"

this standard "must be balanced against the requirement under Rule 16(b) that the

Court's scheduling order 'shall not be modified except upon a showing of good cause.'"

*Grochowski v. Phoenix Construction*, 318 F.3d 80, 86 (2d Cir. 2003) (quoting Fed. R.

Civ. P. 15(a) and 16(b)).  S*ee Carnrite v. Granada Hospital Group, Inc.*, 175 F.R.D. 439,

447 (W.D.N.Y. 1997) (a Rule 16(b) scheduling order "shall not be modified except upon

a showing of good cause").  Here, however, Plaintiff's Motion to Amend was filed on

October 12, 2010, well before the January 14, 2011 deadline for moving to amend set

forth in the October 12, 2010 Scheduling Order (Doc. No.  32).  As such, Plaintiff's

Motion to Amend was timely filed in accordance with the Scheduling Order which need

not be amended upon a showing of good cause, and the court considers whether

Plaintiff's proposed claims could withstand a motion to dismiss pursuant to Rule

12(b)(6) such that the claims are not futile.

On a motion to dismiss under Rule 12(b)(6), two recent Supreme Court cases

require application of "a 'plausibility standard,' which is guided by '[t]wo working

principles.'"  *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (citing *Bell Atlantic Corp.

v. Twombly*, 550 U.S. 544 (2007), and quoting *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct.

1937, 1949 (2009)).  "First, although 'a court must accept as true all of the allegations

contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and

'[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice.'"  *Harris*, 572 F.3d at 72 (quoting *Iqbal*, 129 S.Ct.

at 1949).  "'Second, only a complaint that states a plausible claim for relief survives a

motion to dismiss,' and '[d]etermining whether a complaint states a plausible claim for

relief will . . . be a context-specific task that requires the review court to draw on its judicial experience and common sense.'" *Id*. (quoting *Iqbal*, 129 S.Ct. at 1950). Despite *Twombly*, courts remain obligated to liberally construe a *pro se* complaint. *Harris*, 572 F.3d at 72 (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570).  As such, the court considers whether Plaintiff's proposed new claims are sufficiently plausible to survive a motion to dismiss and are not futile.


### A.    Proposed Fifth Claim

In particular, insofar as Plaintiff seeks to assert the Proposed Fifth Claim alleging a loss of good time credits, Plaintiff maintains that on December 11, 2007, Southport's Time Allowance Committee ("TAC") served Plaintiff with notice advising Plaintiff to appear at a Time Allowance Hearing to determine whether a portion or all of Plaintiff's good time allowance should be withheld.  At the hearing, held on December 28, 2007, Plaintiff explained to TAC Chairman J. Colvin ("Colvin") that Plaintiff's OMH records were incomplete and contained erroneous information, that Plaintiff's hearing assistant, Corrections Counselor Sandra Hess ("Hess"), failed to retrieve several documents Plaintiff requested for use in the hearing, and that Plaintiff was denied the opportunity to present documented OMH evidence and confidential testimony.  Following the hearing, the TAC issued a written report recommending all of Plaintiff's good time credits, totaling six years, be withheld based on Plaintiff's overall poor disciplinary history and Plaintiff's failure to complete Aggression Replacement Treatment ("ART").  The TAC's

recommendation was affirmed by Defendant Napoli on January 2, 2008, and DOCS
Director of Special Housing Unit ("SHU") Donald Selsky ("Selsky"), affirmed the decision
on January 11, 2008 ("the TAC Decision").  Plaintiff seeks to sue as Defendants to the
Proposed Fifth Claim Colvin, Napoli, and SHU Director Selsky.

Defendants argue the Proposed Fifth Claim is futile because a determination in
Plaintiff's favor on this claim would necessarily imply that invalidity of the TAC Decision
to withhold Plaintiff's good time credits.  Defendants' Memorandum Opposing
Amendment at 5-6.  Plaintiff has not proffered any argument in further support of his
Proposed Fifth Claim.

Insofar as Plaintiff is seeking restoration of his good-time credits, the sole
remedy for such request is a writ of habeas corpus.  *Edwards v. Balisok*, 520 U.S. 641,
643-44 (1997) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (holding the sole
remedy in federal court for a prisoner seeking restoration of good-time credits is a writ
of habeas corpus)).  As such, Plaintiff's request to amend the Complaint to seek
restoration of his good-time credits is futile.

Furthermore, Plaintiff's proposed assertion that the procedures at the Time
Allowance Hearing deprived Plaintiff of due process in violation of the Fourteenth
Amendment is also futile.  Specifically, § 1983 claims challenging the procedures
employed at a disciplinary hearing, including a Time Allowance Hearing challenged
here, are subject to the same limitations announced in *Heck v. Humphrey*, 512 U.S.
477 (1994).  *Edwards*, 520 U.S. at 646.  As relevant, in *Heck*, the Supreme Court held
that where the nature of the procedural challenge would, if successful, necessarily imply
the invalidity of the resulting judgment, no claim under § 1983 can proceed until and

12

unless the judgment is overturned.  *Heck*, 512 U.S. at 486 ("the hoary principle that civil

tort actions are not appropriate vehicles for challenging the validity of outstanding

criminal judgments applies to § 1983 damages actions that necessarily require the

plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always

applied to actions for malicious prosecution.").

As relevant to the instant case, in *Edwards*, the Supreme Court extended *Heck*

to claims challenging the procedures used in a prison disciplinary hearing resulting in a

deprivation of an inmate's good-time credits.  *Edwards*, 520 U.S. at 644-46.  With

regard to the instant case, "[t]he principal procedural defect complained of would, if

established, necessarily imply the invalidity of the deprivation of [Plaintiff's] good-time

credits," the claim is barred until and unless Plaintiff proves the challenged sentence,

here, the withholding of six years of good-time credits, has been overturned in a habeas

corpus proceeding.  *Edwards*, 520 U.S. at 646.  Plaintiff's proposed allegations in

support of his denial of due process claim in connection with the Time Allowance

Hearing include that his prison disciplinary hearing record before TAC Chairman Colvin

both contained erroneous information, and was incomplete because Hess, Plaintiff's

hearing assistant, failed to retrieve several requested by Plaintiff and that Plaintiff was

denied the opportunity to present documented OMH evidence and confidential

testimony.

Because a prison inmate's statutory good-time credits are a protected liberty

interest, any prison disciplinary hearing at which the determination is made to deprive

the inmate of such credits must comport with constitutional due process of law.

*Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 (2d Cir. 1991) (citing *Ponte v. Real*, 471

U.S. 491, 495 (1985)).  At issue in *Kingsley* was a prisoner's petition for writ of habeas corpus seeking reinstatement of good-time credit revoked following a disciplinary hearing at which the inmate plaintiff was arbitrarily denied the right to present evidence, including witness testimony.  *Kingsley*, 937 F.2d at 27.  "These due process safeguards include the right to call and present witnesses in [Plaintiff's] defense."  *Kingsley*, 937 F.2d at 30 (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974)).  A prisoner's right to call witnesses and present evidence in disciplinary hearings may be denied if permitting the prisoner's request "would be unduly hazardous to institutional safety or correctional goals," or if the requested evidence would be irrelevant or unnecessary.  *Id*.  (internal citations omitted).  Nevertheless, "[t]he burden is not upon the inmate to prove the official's conduct was arbitrary and capricious, but upon the official to prove the rationality of the position."  *Id.* at 30-31.  Moreover, where the disciplinary hearing decision, notwithstanding the plaintiff's success on an evidentiary challenge, is still supported by "some evidence" of the inmate's guilt, the plaintiff's success on the evidentiary challenge would *not* necessarily imply the invalidity of the conviction, such that the plaintiff would not be required to first obtain, through a habeas proceeding, a decision reinstating the good-time credits.  *Edwards*, 520 U.S. at 648.

In the instant case, Plaintiff's factual allegations in support of the Proposed Fifth Claim include that TAC Chairman Colvin's decision to revoke Plaintiff's six years of good-time credits was supported not only by the nature of the incidents at issue in this action, but also Plaintiff's "overall poor disciplinary history" and Plaintiff's "failure to complete the 'Aggression Replacement Treatment.'"  Proposed Fifth Claim, Proposed Amended Complaint ¶ 9.  As such, even if Plaintiff were to succeed in establishing that

he was denied the opportunity to present at the Time Allowance Hearing evidence favorable to Plaintiff, other evidence in the record, including Plaintiff's DOCS disciplinary record pertaining to other disciplinary incidents involving Plaintiff, as well as references to Plaintiff's acceptance into, and failure to complete Anger Replacement Treatment, an anger management program, may qualify as "some evidence" to support the decision to revoke Plaintiff's good-time credits, an issue not resolvable on the instant motion and, thus, would not necessarily imply the invalidity of the TAC Decision revoking Plaintiff's good time credits.  In such case, Plaintiff would not be required to have the TAC Decision overturned prior to bringing this claim, but could seek to recover under § 1983 at least nominal damages for the deprivation of constitutional due process.

Accordingly, Plaintiff's Proposed Fifth Claim alleging deprivation of due process with regard to the procedures employed during Plaintiff's Time Allowance Hearing is not futile.

Plaintiff's Motion to Amend to add the Proposed Fifth Claim is DENIED insofar as Plaintiff seeks reinstatement of his good time credits, but is GRANTED as regards Plaintiff's challenge that the procedure by which his good-time credits were revoked failed to comport with constitutional due process requirements.


### B.     Proposed Sixth Claim

Plaintiff seeks to add a Sixth Claim asserting numerous Defendants and proposed defendants committed state common law torts including assault and battery and negligence by Defendants Chapman, Deburgomaster, Gilboy, and Esgrow, based

on the incidents alleged in connection with the First Claim, abuse of process, medical

negligence, malpractice, and fraud by proposed defendants Bill Vertowski and Denise

Fuller based on incidents alleged with regard to the Second and Third Claims,

negligence against proposed defendants Colvin and Selsky as to the incidents asserted

in the Proposed Fifth Claim, and medical negligence and negligent supervision against

Defendants Antonsen and Henderson with regard to the allegations of the Second

Claim.  In opposing the Proposed Sixth Claim, Defendants assert that because all

Defendants and proposed defendants are DOCS employees, they are immune from

liability for such claims based on New York Corrections Law ("N.Y. Corr. Law")[4] § 24 ("§

24").  Defendants' Memorandum Opposing Amendment at 7-11.  In further support of

the Motion to Amend, Plaintiff argues that the Supreme Court has ruled § 24

unconstitutional.  Plaintiff's Reply Supporting Amendment at 8-10.

As relevant, New York Corrections Law § 24 provides

1.      No civil action shall be brought in any court of the state, except by the
        attorney general on behalf of the state, against any officer or employee of
        the department, in his personal capacity, for damages arising out of any
        act done or the failure to perform any act within the scope of the
        employment and in the discharge of the duties by such officer or
        employee.

2.      Any claim for damages arising out of any act done or the failure to
        perform any act within the scope of the employment and in the discharge
        of the duties of any officer or employee of the department shall be brought
        and maintained in the court of claims as a claim against the state.

N.Y. Corr.  Law § 24[1] and [2].

In other words, exclusive jurisdiction for the New York common law claims Plaintiff

---

[4] References to N.Y. Corr. Law are to McKinney's 2003.

16

seeks to add lies in the New York Court of Claims as a claim against New York.

Plaintiff maintains that the Supreme Court has recently held § 24 unconstitutional.  Plaintiff's Reply Supporting Amendment at 8-10 (citing *Haywood v. Drown*, __ U.S. __, 129 S.Ct.  2108 (2009).  In *Haywood*, the Supreme Court held that § 24 violates the Supremacy Clause of the United States Constitution, stating "having made the decision to create courts of general jurisdiction that regularly sit to entertain analogous suits, New York is not at liberty to shut the courthouse door to federal claims that it considers at odds with its local policy."  *Haywood*, 129 S.Ct. at 2117.  Although the Supreme Court held § 24 unconstitutional insofar as it barred federal § 1983 claims in state court, the issue in the instant case, *i.e.*, whether § 24 precludes Plaintiff's proposed New York common law claims in this court, was not before the Supreme Court in *Haywood* and, thus, was not addressed.

Moreover, the Second Circuit has held that the immunity from suit in state court provided to DOCS employees by § 24 extends to suits for tort claims based on state law against DOCS employees in federal court.  *Baker v. Coughlin*, 77 F.3d 12, 14 (2d Cir. 1996).  The Second Circuit determined that "by its plain terms, § 24 governs the substantive rights of corrections officers by conferring upon them an immunity from liability for activities that fall within the scope of the statute," and corrections officers "are entitled to invoke the benefits of § 24 irrespective of the forum in which [the plaintiff] chooses to pursue [his] claims."  *Id*. at 15-16.  Accordingly, where state claims would have been dismissed pursuant to § 24 by a New York court, the district court must also dismiss such claims.  *Id*. at 16.

As such, because Defendants would be entitled to immunity under § 24 on

Plaintiff's proposed New York common law claims in state court, Defendants are

likewise entitled to that same immunity in this court. *Baker*, 77 F.3d at 16.  Plaintiff's

Proposed Sixth Claim is thus futile and Plaintiff's Motion to Amend to assert the claim is

DENIED.


### C.      Proposed Seventh Claim

Plaintiff's Proposed Seventh Claim asserts all Defendants violated 42 U.S.C. §

1981, by discriminating against Plaintiff based on the fact that Plaintiff is an African-

American Jew and an African-American qualified person with a disability, in violation of

Plaintiff's rights under the First, Fourth, Eighth and Fourteenth Amendments.  Proposed

Amended Complaint, Proposed Seventh Claim ¶ 1.  In support of this claim, Plaintiff

asserts that Defendants Antonsen and Henderson denied and withheld Plaintiff's

kosher CAD meals from Plaintiff while Plaintiff was being held in isolation in Walsh

RMU and force-fed. *Id*. ¶ 2.  Defendants oppose the Proposed Seventh Claim on the

basis that the March 25, 2010 Order dismissed with prejudice all of Plaintiff's  claims

alleging violations the First Amendment and the RLUIPA concerning Plaintiff's kosher

diet, arguing that Plaintiff cannot attempt to reinstate such claims by alleging religious

discrimination on the basis that he is an African-American Jew.  Defendants'

Memorandum Opposing Amendment at 10.  Defendants also assert that no relief is

available to Plaintiff under § 1981 which prohibits discrimination with regard to a

contractual relationship, which is absent in the instant case. *Id*. at 10-11.  Finally,

Defendants argue that insofar as Plaintiff asserts a claim based on being an "African-

American Qualified Person with Disability" in connection with the denial of his kosher

diet while being force-fed as a result of Plaintiff's hunger strikes, Plaintiff also fails to state a claim under § 1981.  *Id.*  at 11.

In further support of his Proposed Seventh Claim, Plaintiff argues that the allegations of the First, Second and Third Claims state that Defendants discriminated against Plaintiff in violation of 42 U.S.C. § 1981, based on the fact that Plaintiff is an African-American Jew with a disability, by subjecting Plaintiff to physical assaults, filing false misbehavior reports against Plaintiff, causing Plaintiff to go on a hunger strike, and then seeking to have Plaintiff force-fed during which time Plaintiff was denied his kosher CAD meals, all to discriminate against Plaintiff based on Plaintiff's religion and race. Plaintiff's Reply Supporting Amendment at 1-5.

Section § 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens. . . ." 42 U.S.C. § 1981(a).  In the instant case, however, Plaintiff fails to allege in support of his Proposed Seventh Claim that he was denied any right to contract, to sue, to be a party to a legal action, or to give evidence in a court of law, nor does Plaintiff specify any law or proceeding for the security of persons or property to which he was denied the full and equal benefit.  Even a liberal construction of the Proposed Amended Complaint establishes only the absence of any factual allegations that, broadly construed as required in light of Plaintiff's *pro se* status, *Haines v. Kerner*,  404 U.S. 519, 520 (1972) (allegations of *pro se* complaint are held to less stringent standards than formal pleadings drafted by attorneys), could support a claim under §

1981.  As such, Plaintiff's Motion to Amend is DENIED with regard to the Proposed

Seventh Claim.


**D.     Proposed Eighth Claim**

Plaintiff's Proposed Eighth Claim asserts Defendants conspired to have Plaintiff

force-fed, in violation of 42 U.S.C. §§ 1981, 1983, 1985, and 1986.[5]  Proposed

Amended Complaint, Proposed Eighth Claim, ¶¶ 1 and 2.  According to Plaintiff,

proposed defendant Vertowski violated Plaintiff's rights by testifying, in agreement with

other Defendants and on behalf of OMH, at the November 29, 2007 Show Cause

Hearing in support of force-feeding Plaintiff.  Propose Seventh Claim ¶ 1.  Plaintiff

further maintains that proposed defendant Denise Fuller violated Plaintiffs' civil rights by

entering into an agreement with other Defendants to uphold and extend Plaintiff's force

feeding from April 2008 through August 2008 to retaliate against Plaintiff for filing

inmate grievances and commencing other litigation against Defendants, and to

discriminate against Plaintiff based on his status as an African-American Jewish

qualified person with a disability. *Id*. ¶ 2.

Defendants oppose the Proposed Eighth Claim on the basis that Plaintiff makes

only conclusory assertions of racial or religious-based discrimination which are

insufficient to support a civil right conspiracy claim.  Defendants' Memorandum

---

[5]  Pursuant to 42 U.S.C. § 1985, it is illegal for any state actor to conspire to interfere with any person's civil rights.  Under 42 U.S.C. § 1986, liability may be imposed on any individual who, despite knowledge of wrongs prohibited under § 1985, fails or neglects to take any action to prevent the commission of such wrongs.  Accordingly, absent a violation of § 1985, there can be no violation of § 1986.  Further, although Plaintiff seeks to allege in his Proposed Eighth Claim that Defendants conspired to discriminate against him based on his race, religion and disability, insofar as Plaintiff references 42 U.S.C. § 1983, such claims are repetitive of Plaintiff's First, Second, Third and Fourth Claims.

Opposing Amendment at 11-13.  In further support of the Proposed Eighth Claim,

Plaintiff argues that the allegations on the First, Second and Third Claims that Plaintiff

was subject to excessive force, false misbehavior reports, procedurally deficient

disciplinary hearings, and force-feeding, and the fact that Plaintiff is an African-

American Jewish qualified person with a disability sufficiently alleges race and religion-

based conspiracy to discriminate claims.  Plaintiff's Reply Supporting Amendment at 6-

8.

"It is well settled that claims of conspiracy 'containing only conclusory, vague, or

general allegations of conspiracy to deprive a person of constitutional rights cannot

withstand a motion to dismiss.'"  *Gallop v. Cheney*, __ F.3d __, 2011 WL 1565858 (2d

Cir. Apr. 27, 2011) (quoting *Leon v. Murphy*, 988 F.2d 303, 311 (2d Cir. 1993)).  The

failure to allege any fact corroborating a meeting of the minds among the alleged

conspirators renders a conspiracy claim baseless.  *Id*.  Here, Plaintiff has failed to

allege any fact corroborating a meeting of the minds among any of the Defendants

establishing a conspiracy to deprive Plaintiff of any constitutional rights based on his

race, religion, or unspecified disability.

With regard to his race and religion, Plaintiff argues that both people of African

ancestry and Jewish ancestry are recognized as distinct races, as well as that

numerous people of African ancestry are also of Jewish ancestry, having descended

from the lost tribe of Israel, and submits numerous exhibits in support of his assertion.

Plaintiff's Reply Supporting Amendment at 3-4; Plaintiff's Amendment Exh. C (excerpts

from Wikipedia article (regarding the definition of "black people" as referring "to a racial

group of humans with skin colors that range from light brown to nearly black . . . . used

to categorize a number of diverse populations together based on historical and

prehistorical ancestral relations" and further estimating that "Israel is home to over

5,000 members of the African Hebrew Israelites of Jerusalem movement"), and The

Original African Heritage Study Bible, King James Version, *Levitcus* 17:10 (discussing

Jewish prohibition against consuming blood of humans or animals), and *Deuteronomy*

28:64-30:19 (discussing that because after the destruction of the Temple in Jerusalem

in 70 A.D., many African Hebrews traveled south to various points in Ethiopia, Egypt,

and the west coast of Africa, many Hebraic cultural traits are directly traceable to the

tribes of West Africa, and the Ashanti people of West Africa evolved from the ancient

Hebrews); and Exh. D (excerpts from Wikipedia article regarding Black Hebrew

Israelites (discussing that although "Black Hebrew Israelites . . . are groups of people

mostly of Black African ancestry situated mainly in the United States who believe they

are descendants of the ancient Israelites . . . . [t]hey generally are not accepted as

Jews by the greater Jewish community, and many Black Hebrews consider themselves

– and not mainstream Jews – to be the only authentic descendants of the ancient

Israelites.")).  The record, however, is devoid of any evidence indicating Defendants

dispute Plaintiff is an African American Jew.

Further, Plaintiff submits an excerpt from the transcript of Dr. Trabout's testimony

given at the Show Cause Hearing to establish that Defendants were aware that Plaintiff

refused to allow his blood to be drawn to test Plaintiff's electrolytes balance because

Plaintiff, under Jewish law, was prohibited from giving blood.  Plaintiff's Reply

Supporting Amendment at 3 (citing Dr. Trabout's Tr.[6] at 15-16).  In particular, Dr.

Trabout, in response to questioning, testified that he himself is Jewish, but is unaware

of any restriction in the Jewish faith against having blood drawn.  Dr. Trabout's Tr. at

15-16.  Significantly, Dr. Trabout's testimony is consistent with the portions of The

Original African Heritage Study Bible Plaintiff submitted, which establish only a

prohibition against Jews drinking the blood of another human or an animal, but do not

address the drawing of blood for medical testing purposes.

Accordingly, Plaintiff has failed to establish there is any plausibility, *Iqbal*, 129

S.Ct.  at 1949, to his proposed claim that Defendants conspired to discriminate against

him based on his race or religion, such that Plaintiff's proposed Eighth Claim is futile.

Nor has Plaintiff met his burden of plausibility with regard to his disability discrimination

claim under Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12131 *et*

*seq.*, ("the ADA"), prohibiting a "public entity" from discriminating against a "qualified

individual with a disability" on account of that individual's disability.  Significantly, 42

U.S.C. § 12132, which applies to inmates in state prisons, *Pennsylvania Dept.  of*

*Corrections v. Yeskey*, 524 U.S. 206, 208 (1998), provides that "no qualified individual

with a disability shall, by reason of such disability, be excluded from participation in or

be denied the benefits of the services, programs, or activities of a public entity, or be

subjected to discrimination by any such entity."  Further, "[t]he term 'qualified individual

with a disability' means an individual who, with or without reasonable modifications to

rules, policies, or practices, . . . meets the essential eligibility requirements for the

---

[6] References to "Dr. Trabout's Tr." are to the transcript of the testimony of Dr. Trabout given at the Show Cause Hearing, submitted as Plaintiff's Exh. A.

receipt of services or the participation in programs or activities provided by a public entity."  42 U.S.C § 12131(2).  Although in the instant case Plaintiff has not specified the alleged disability as the basis for Defendants' disability-based conspiracy discrimination, Plaintiff submits exhibits in an attempt to establish that Defendants considered Plaintiff under a mental disability, but a fair reading of these exhibits demonstrates otherwise.

In particular, Plaintiff submits a Memorandum from proposed defendant psychologist Verbowski to, *inter alia*, Defendants Napoli, Dr. Haluska, and Bridge, dated November 16, 2007 ("Nov. 16, 2007 Memorandum"),[7] discussing Verbowski's findings from a mental health evaluation of Plaintiff.  According to Verbowski, Plaintiff's OMH service level was 6, indicating Plaintiff was not then in need of any mental health services.  November 16, 2007 Memorandum at 1.  Plaintiff was evaluated in connection with Plaintiff's hunger strike, which Plaintiff maintains was based on "complaints [ ] centered on perceived threats and harassment by security staff that he believes are retaliatory in response to his past grievances, complaints, and civil litigation."  Nov. 16, 2007 Memorandum at 1.  Verbowski reported that Plaintiff sought as "relief" from his hunger strike "having his complaints addressed by DOCS Legal Counsel; an admission that staff's conduct toward him are retaliation and in violation of his rights; and/or a transfer to a facility out of this current 'hub.'"  *Id*.  Verbowski noted Plaintiff had a history of needing mental health services in 2005, but found no correlation between Plaintiff's hunger strike and any mental health status or symptoms, and no mental health

---

[7] Plaintiff's Exh. E.

24

treatment was indicated at that time.  *Id*.  Verbowski's recommendation based on the evaluation was that Plaintiff's mental status was "clear" with "no evidence of delusional or paranoid preoccupations, disorganized or illogical thinking," that Plaintiff's mental status should continue to be evaluated for the duration of his hunger strike, but that no treatment was indicated at that time. *Id*.  at 4.

Similarly, in a Memorandum from proposed defendant Nurse Denise Fuller to, *inter alia*, Defendants Napoli, and Bridge, dated April 28, 2008 ("April 28, 2008 Memorandum"),[8] Fuller reports that although Plaintiff "is not an active patient, [Plaintiff] has been seen daily by OMH clinical staff for consultative services, as well as by Dr. V. Satti, Psychiatrist, on April 36, 2008."  April 28, 2008 Memorandum at 1.  Plaintiff's "mental status exams have evidenced stability in mood, thought process, and an absence of perpetual disturbance." *Id*.  Fuller concludes that "[a]t present, [Plaintiff's] behavior appears willful and does not appear to be a symptom of mental illness."  *Id*. Plaintiff's OMH level was 6 and, as such, no treatment was recommended, although Plaintiff was to continue to be daily monitored by both medical and OMH personnel until Plaintiff ended his hunger strike.  *Id*.

In a later Memorandum from Fuller dated August 5, 2008 ("Aug. 5, 2008 Memorandum"),[9] Fuller reports that Plaintiff's "weight has remained stable since the initiation of the feeding over objection.  He continues to be fed over objection to date." Aug.  5, 2008 Memorandum at 1.  Fuller continued that Plaintiff "is not an active patient,

---

[8] Plaintiff's Exh.  F.

[9] Plaintiff's Exh.  F.

but continues to be assessed daily by OMH clinicians and weekly by the consulting psychiatrist." *Id*. According to Fuller, Plaintiff's "mental status has been consistently unremarkable in the 3 months since initiating the hunger strike." *Id*. Fuller concludes that "[a]t present, his behavior appears willful and does not appear to be a symptom of metal illness. He is an OMH level 6. He will continue to be monitored daily by both medical and OMH personnel, until he rescinds the hunger strike." *Id*.

Because nowhere within any of these exhibits is there any indication that Defendants considered Plaintiff to be under a mental disability, these exhibits fail to establish that it is plausible Plaintiff could succeed on claim that Defendants conspired to discriminate against Plaintiff based on a disability, whether actual or perceived. *See Yeskey*, 524 U.S. at 208-12 (permitting inmate plaintiff to maintain ADA claim based on his exclusion, for health reasons, from prison boot camp program, the successful completion of which would have led to plaintiff's early release from prison); As such, Plaintiff's conspiracy claims are based on only the barest conclusory allegations which are insufficient to withstand a motion to dismiss. According, Plaintiff's Motion to Amend is DENIED with regard to the Proposed Eighth Claim.

**2.   Motion to Compel**

Plaintiff seeks to compel Defendants to produce certain documents, e-mails, memoranda, and videotapes in response to Plaintiff's discovery request dated August 29, 2010. In particular, Plaintiff seeks to compel production of (1) his mental health records; (2) e-mails and "to/from" correspondence concerning DOCS staff; (3) video tapes depicting Plaintiff being force-fed between April 2008 and August 2008, and

Defendants' cell-extraction of Plaintiff in preparation to force-feed Plaintiff; (4) unusual incident reports prepared in connection with Plaintiff's force-feeding between April and August 2008, and (5) copies of DOCS Directives 4301 and 4302. Plaintiff's Affidavit Supporting Discovery ¶¶ 6 and 9. In response, Defendants assert that Plaintiff's mental health records recently were obtained and were being served on Plaintiff, but would not be electronically filed to protect Plaintiff's privacy, Murphy Declaration ¶ 4, that all "to/from correspondence" and non-privileged e-mails contained in Plaintiff's medical records have been produced, *id.* ¶ 5, and that all Unusual Incident Reports concerning Plaintiff's hunger strikes have been produced. *Id.* ¶ 9. Because Plaintiff does not dispute that Defendants have produced such requested discovery, Plaintiff's Motion to Compel, with regard to these requests, is DISMISSED as moot, and the court addresses only the three remaining discovery requests at issue.

As relevant, Fed.R.Civ.P. 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Material that is not admissible at trial nevertheless is discoverable if it "appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. "Reasonably calculated" includes "'*any possibility* that the information sought may be relevant to the subject matter of the action.'" *Daval Steel Products, a Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991) (quoting *Morse/Diesel, Inc. v. Fidelity and Deposit Co. of Maryland*, 122 F.R.D. 447, 449 (S.D.N.Y. 1988) (additional quotations omitted; italics in original). There are, however, limits to discovery, including where the requested discovery is privileged, or would be unduly burdensome to produce. Fed.R.Civ.P. 26(b). Once the possible relevance of

27

the requested discovery is established, "'the burden shifts to the party opposing discovery to show the discovery is improper.'"  *Woodward v. Mullah*, 2009 WL 4730311, at *1 (W.D.N.Y. Dec.  4, 2009) (quoting *Condit v. Dunne*, 225 F.R.D. 100, 106 (S.D.N.Y. 2004)).  The party's burden in opposing discovery "requires an evidentiary showing by competent evidence and cannot be discharged by mere conclusory or *ipse dixit* assertions."  *AIU Ins. Co. v. TIG Ins. Co.*, 2008 WL 5062030, at *9 (S.D.N.Y. Nov.  25, 2008) (quoting *Abu-Nassar v. Elders Futures Inc.*, 1991 WL 45062, at * 15 (S.D.N.Y. Mar.  28. 1991) (internal citations and quotation marks omitted)).

In particular, the court addresses Defendants' assertions that (1) certain e-mail communications between DOCS Associate Counsel Nancy Heywood ("Heywood") and Defendants are shielded from disclosure by the attorney-client privilege, Murphy Declaration. ¶¶ 5-6 and Exh. A,[10] (2) Plaintiff's request for videotapes of Defendants force-feeding Plaintiff are overly broad and unduly burdensome given that Plaintiff neither challenges the procedures or methods by which he was force-fed, nor asserts that such videotapes are relevant or would establish any wrong-doing by Defendants, *id.* ¶ 7, and (3) Plaintiff is not entitled to a copy of DOCS Directives 4301 and 4302 because "possession of these documents would jeopardize the good order, safety and security of the facility." *Id*. ¶ 9.

Defendants assert that the attorney-client privilege shields from disclosure three e-mail communications from DOCS Associate Counsel Nancy Heywood ("Heywood").

---

[10] Murphy Declaration Exh. A is Defendants' Privilege Log listing three e-mails from Heywood to either Defendant Bridge or Dr. Trabout withheld from disclosure on the basis of the attorney-client privilege.

Murphy Declaration ¶ 5.  In support of the asserted attorney-client privilege, Defendants submit a privilege log ("Privilege Log")[11] listing three e-mails from Heywood, including e-mails dated April 25, 2008 to Defendant Bridge regarding "Phase II - Hungerstrike," December 20, 2007 to Defendant Dr.  Trabout regarding "Reply to Hungerstrike - Phase," and November 20, 2007 to Bridge regarding "Hungerstrike - Phase II." Privilege Log.  In further support of his Motion to Compel, Plaintiff asserts that the Privilege Log does not list unusual incident reports and memoranda that should have been prepared for Defendants Fischer and LeClaire in connection with Plaintiff's force-feeding while housed in Southport and Walsh R.M.U., and which have not previously been provided to Plaintiff.  Plaintiff's Reply Supporting Discovery ¶ 3.  Plaintiff further maintains that Defendants' Privilege Log fails to establish that the three listed e-mails actually contain any legal information pertinent to the instant action.  *Id*.

Insofar as any unusual incident reports and memoranda prepared for Defendants Fischer and LeClaire in connection with Plaintiff's force-feeding at Southport and Walsh R.M.U. exist, they are relevant to, or likely to lead to evidence relevant to the instant action and must be produced.  With regard to the three e-mails from Heywood listed in the Privilege Log, they must also be produced because Defendants have failed to sufficiently establish the e-mails are attorney-client communications shielded from disclosure, and have belatedly asserted the attorney-client privilege as well as the Privilege Log.

In particular, the attorney-client privilege applies to communications made in

---

[11] Murphy Declaration Exh. A.

29

confidence for the purpose of obtaining legal advice or services, and without a waiver of the privilege.  *United States v. Int'l. Bhd. of Teamsters,* 119 F.3d 210, 214 (2d Cir. 1997) (citing *In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983*, 731 F.2d 1032, 1036 (2d Cir. 1984)).  The burden of establishing each element of the privilege, including the absence of any waiver, is upon the party asserting the privilege. *Id.* (citing *United States v. Schwimmer*, 892 F.2d 237, 234 (2d Cir. 1989)).  Because the attorney-client privilege limits the admissibility of relevant evidence in judicial and other proceedings, however, it is strictly construed.  *Id.* (citing *In re Horowitz*, 482 F.2d 72, 81 (2d Cir.) (citing 8 Wigmore, EVIDENCE §§ 2192 at 70, 554 (1961)), *cert. denied*, 414 U.S. 867 (1973)).

The mere fact that an attorney is consulted by a client does not render the ensuing communications privileged if the purpose of the consultation is to obtain other than legal advice or services.  *See In re County of Erie*, 473 F.3d 413, 421 (2d Cir. 2007) (attorney consultation for purpose other than attaining legal advice is not privileged); *Reino de Espana v. American Bureau of Shipping*, 2005 WL 3455782, at *2-3 (S.D.N.Y. Dec. 14, 2005) (e-mails among a party's executives and in-house attorney containing "non-legal discussions of business-related issues" including "public relations strategies," not privileged particularly where employees outside legal department are recipients and "legal issues do not predominate.").  Here, the brief description of the withheld e-mails in the Privilege Log are insufficient to establish that the purpose of the information contained within was actual legal advice given .

Furthermore, even assuming, *arguendo*, the attorney-client privilege did attach to the three Heywood e-mails, Defendants' failure to timely assert the privilege and to

provide a privilege log waives the privilege.  When a party withholds relevant information that is discoverable, pursuant to Fed.R.Civ.P. 26(b)(1), on the grounds of privilege, a party is obligated to promptly provide the adverse party with notice of the claimed privilege by preparing and serving a privilege log sufficiently describing the withheld information to enable the adverse party to assess the validity of the asserted privilege.  Fed.R.Civ.P. 26(b)(5((A); *see also* W.D.N.Y. Local R.Civ.P. 26(f) (requiring privilege log be furnished "at the time of the response [to discovery]").  A failure to comply with this requirement results in a waiver of the asserted privilege in the withheld information.  *See United States v. Construction Products Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996) (failure to provide adequately detailed court-ordered privilege log waives privilege); *Bove v. The Allied Group*, 2004 WL 5902631, *1 (W.D.N.Y. Oct. 28, 2004 (failure to provide privilege log complying with local rule waives privilege); *A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*, 2000 WL 1538003, *3 n. 1 (S.D.N.Y. Oct. 17, 2000) (citing *PKFinans Int'l. Corp. v. IBJ Schroder Leasing Corp.*, 1996 WL 525862, *3 (S.D.N.Y. Sep't. 17, 1996) ("party's failure to produce [privilege] log results in a waiver of any privilege that might otherwise be asserted" (citing caselaw))).

Here, Defendants' obligation to produce the three Heywood e-mails or a privilege log listing the e-mails and asserting them shielded by the attorney-client privilege accrued not later than 30 days after Plaintiff served his discovery requests on August 29, 2010.  *See PKFinans International Corporation v.  IBJ Schroder Leasing Corporation*, 1996 WL 525862, *3 (S.D.N.Y. Sept. 17, 1996) (privilege log is timely produced 30 days after the first request for the production of the subject documents). Although Defendants responses to the discovery requests were filed on October 1,

31

2010, Defendants never provided Plaintiff with a privilege log until February 23, 2011 when Defendants attached the Privilege Log to the Murphy Declaration.  Accordingly, Defendants, by failing to timely produce the Privilege Log, have waived any privilege that attached to the documents listed therein.

Plaintiff's Motion to Compel the Heywood e-mails is GRANTED.

With regard to Plaintiff's request for videotapes of Plaintiff being force-fed and forcefully extracted from his cell between April and August 2008, Defendants admit that videotapes of all such incidents exist, but that the request is overly broad and unduly burdensome given that during that period of time, Plaintiff was subjected to three daily force-feedings, and Plaintiff does not contend that any irregularity or other violation occurred in connection with the cell-extractions and force-feedings.  Murphy Declaration ¶ 7.  In further support of their argument, Defendants also submit a letter from DOCS Captain H. Hetrick ("Hetrick") to Assistant Attorney General Murphy, dated February 23, 2011 ("Feb.  23, 2011 Letter")[12] explaining that there exist a total of 93 VHS-C tapes covering the 99 days during which Plaintiff was force-fed.  According to Hetrick, because Southport is without any means of "high speed dubbing" of the video tapes, fulfilling Plaintiff's request would required one DOCS employee to spend 57 hours viewing and manually copying each tape. *Id*.

In further support of the Motion to Compel, Plaintiff narrowed the videotaped force-feedings and cell-extractions requested to April 29, 2008, May 24, 25, 27, 28 and 29, 2008, July 30, 2008, and August 5, 2008.  Plaintiff's Reply Supporting Discovery ¶

---

[12] Murphy Declaration Exh. B.

4.  According to Plaintiff, the cell-extractions and force-feedings occurring on these dates were the subject of an inmate grievance, and the related videos depict Plaintiff verbally expressing his willingness to drink the liquid nutrition, rather than be force-fed, but that Defendants persisted in force-feeding Plaintiff.  *Id*.

Fed. R. Civ. P. 26(b)(2)(C) provides for limiting any discovery where "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."  Fed. R. Civ. P. 26(b)(2)(C)(iii).  Generalized objections that a discovery request is unduly burdensome are insufficient; rather, the party objecting to the requested discovery on the ground of undue burdensomeness must submit an affidavit or offer other evidence revealing the nature of the burden.  *Cliffstar Corp. v. Sunsweet Growers, Inc.*, 218 F.R.D. 65, 69-70 (W.D.N.Y. 2003) ("for a burdensomeness objection to be sustained, a motion to compel on this ground must be opposed by an affidavit of a person with knowledge of [the subject matter] explaining in reasonable detain the factual basis for such objection.").  *See also Burns v. Imagine Films Entertainment, Inc.*, 164 F.R.D. 589, 592-93 (W.D.N.Y. 1996) (holding generalized objections that a discovery request is burdensome without resort to specific reasons is insufficient to justify refusal to respond).

Plaintiff's narrowing of the number of video-taped force-feedings and cell-extractions negates Defendants' opposition to the requested discovery as overly broad and unduly burdensome.  Significantly, Defendants have not further responded in opposition to Plaintiff's argument in any way, much less to explain that copying even a

33

few days of the videotapes would also be unduly burdensome, nor have Defendants

denied that Plaintiff was force-fed despite offering to drink the liquid nutrition, or

asserted that drinking the liquid nutrition was not permitted.  As such, Plaintiff's request

for videotapings of the force-feedings and cell-extractions of April 29, 2008, May 24, 25,

27, 28 and 29, 2008, July 30, 2008, and August 5, 2008, is GRANTED.

     Finally, with regard to Defendants' assertion that production of DOCS Directives

4301 and 4302 "would jeopardize the good order, safety and security of the facility,"

Murphy Declaration ¶ 9 (citing Defendants' October 1, 2010 Response to Plaintiff's

Request for Production of Documents No. 20 (Doc. No. 42)),  Defendants have failed to

provide any information as to how the production of the requested Directives would

jeopardize any correctional facility's security, nor did Defendants, in their response to

Plaintiff's Request for Production of Documents No. 20, provide such information, as

Defendants suggest by referring the court to such document.  Moreover, the court is

unable to discern from the motion papers the substance of DOCS Directives 4301 and

4302.

     Significantly, it is Defendants' burden to establish that disclosure of the

requested DOCS Directives would, in fact, jeopardize the correctional facility's safety or

security.  *See Medina v. Hunt*, 2008 WL 398439, at * 5 (N.D.N.Y. Feb.  11, 2008)

(directing defendant DOCS employees to either produce within 30 days copies of

requested DOCS Directives, "or provide a specific and compelling reason for not doing

so because of institutional safety and security concerns.").  Defendants' contention that

DOCS Directives 4301 and 4302 were withheld out of concerns for maintaining

institutional safety and security is important and should not be readily disregarded, even

if insufficiently presented.  Accordingly, Defendants must, within 30 days of receipt of this Decision and Order, either provide specific and compelling reasons, in the form of an affidavit from someone with personal knowledge, detailing how providing Plaintiff with copies of DOCS Directives 4301 and 4302 would compromise the correctional facility's safety and security, or produce DOCS Directives 4301 and 4302 to Plaintiff.  Should Defendants choose the former option, Defendants may also provide to the court for *in camera* review copies of DOCS Directives 4301 and 4302.  The court will consider Defendants' submissions in support of withholding DOCS Directives 4301 and 4302 prior to ruling on this request.

Accordingly, Plaintiff's Motion to Compel is DISMISSED as moot in part, and GRANTED in part.  Further, the court is reserving judgment insofar as Defendants have been directed <u>either</u>, <u>within</u> <u>30</u> <u>days</u> <u>of</u> <u>receipt</u> <u>of</u> <u>this</u> <u>Decision</u> <u>and</u> <u>Order</u>, to provide sufficient reasons for withholding DOCS Directives 4301 and 4302 based on concerns of institutional safety and security, <u>or</u> to provide Plaintiff with copies of the subject DOCS Directives.

## CONCLUSION

Based on the foregoing, Plaintiff's motion to amend the complaint (Doc. No. 33),

is DENIED in part and GRANTED in part; Plaintiff's motion to compel (Doc. No. 50) is

DISMISSED as moot in part, GRANTED in part, and decision is RESERVED in part.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:     June 2, 2011
           Buffalo, New York


**Any appeal of this Decision and Order must be taken to by filing a notice of**

**appeal within 14 days of the filing of this Decision and Order pursuant to**

**Fed. R. Civ. P. 72(a).**