UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

GENEO BROWN,

        Plaintiff,
 v.                  **DECISION AND ORDER**
                          09-CV-949S
DEPARTMENT OF CORRECTIONAL SERVICES
OF NEW YORK STATE, NYS OFFICE OF
MENTAL HEALTH, BRIAN FISCHER,
Commissioner, LUCIEN J. LeCLAIRE, Dep. Com. of
Corr., DAVID NAPOLI, Superintendent Southport
C.F., MARSHAL TRABOUT, R.M.D., MARILYN
BRIDGE, DSA of Southport C.F., DR. JOSEPH
HALUSKA, J. ANTONSEN, Dep. Supt. of Health
Services, HENDERSON, N.A., DAVID CHAPMAN,
Corr. Sgt., C.O. GILBOY, Corr. Officer
DEBURGOMASTER, ESCROW, Hearing Officer, J.
COLVIN, D.S.S., DONALD SELSKY, Comm.
Designee,

        Defendants.

## I. INTRODUCTION

Plaintiff Geneo Brown, proceeding *pro se* and *in forma pauperis*, commenced this action pursuant to, *inter alia*, 42 U.S.C. § 1983, alleging that while he was incarcerated at Southport Correctional Facility, Defendants subjected him to cruel and unusual punishment in violation of the Eighth Amendment, retaliated against him for filing grievances in violation of his First Amendment rights, and deprived him of his due process rights in violation of the Fourteenth Amendment. Pending before this Court are the Summary Judgment Motions of Plaintiff and Defendants. This Court finds the matter fully briefed and oral argument unnecessary. For the reasons discussed below, Plaintiff's motion should be denied in its entirety, and Defendants' cross-motion is granted in part and denied in part.

1

## II. BACKGROUND

At all time relevant to his complaint, Plaintiff was an inmate in the custody of the New York State Department of Corrections and Community Services ("DOCCS") incarcerated at Southport Correctional Facility. (Complaint, Docket No. 1, at 1-2). He commenced this action in November 2009, asserting four causes of action alleging that he was deprived of his constitutional rights in violation of, *inter alia*, 42 U.S.C. §§ 1983, 1985, and 1986, and that Defendants violated the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* and the Rehabilitation Act, 29 U.S.C. § 794 *et seq*. (Id.) Following an initial screening, Plaintiff's claims that: (1) Defendants filed false misbehavior reports; (2) sought monetary damages from Defendants in their official capacity; (3) were asserted against Defendants DOCCS and New York State Office of Mental Health ("OMH") for violations of §§ 1985-1986; and (4) alleged violations of the First Amendment's free exercise clause and the Religious Land Use and Institutionalized Persons Act ("RLIUPA"), 42 U.S.C. § 2000cc, were dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b). (March 25, 2010 Decision and Order at 18, Docket No. 3.)

In October 2010, Plaintiff moved to amend the Complaint by adding four additional causes of action. (Docket No. 33.) Defendants opposed the motion. (Docket No. 40.) In a June 2, 2011 Decision and Order, Judge Foschio granted Plaintiff leave to add an allegation that he was deprived of due process by the procedures used in a Time Allowance Committee proceeding in violation of § 1983. (Docket No. 69.) Plaintiff was denied leave to add a sixth claim asserting state common law tort claims; a seventh claim alleging that Defendants discriminated against him on the basis of race and religion in violation of 42 U.S.C. § 1981; and an eighth claim that Defendants conspired to force feed

him and to discriminate against him "based on his status as an African-American Jewish qualified person with a disability" in violation of 42 U.S.C. §§ 1981, 1983, 1985, and 1986. (June 2, 2011 Decision and Order at 15-26.) A full recitation of the relevant facts is included in the June 2011 Decision and Order, and familiarity with this and prior orders is assumed.

## III. DISCUSSION

"A motion for summary judgment may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant the entry of judgment for the moving party as a matter of law." Kaytor v. Elec. Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). A court's function on a summary judgment motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." Kaytor, 609 F.3d at 545. "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2003) (*quoting* Anderson, 477 U.S. at 248), *cert denied*, 540 U.S. 811 (2003). A court must also "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).

Further, "[i]t is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they *suggest*.' "

Triestman v. Federal Bur. of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)(emphasis in original) (quoting Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006)).  "A *pro se* plaintiff, however, cannot defeat a motion for summary judgment by simply relying on the allegations of his complaint; he must present admissible evidence from which a reasonable jury could find in his favor." Belpasso v. Port Auth. of New York & New Jersey, 400 Fed. Appx. 600, 601 (2d Cir. 2010); see Champion v. Artuz, 76 F.3d 483, 485 (2d Cir. 1996) (summary judgment properly entered against *pro se* plaintiff who failed to oppose motion with admissible evidence after receiving plainly worded warning of the consequences of such failure). "[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252.

Plaintiff's remaining claims seek damages for alleged violations of his constitutional rights pursuant to 42 U.S.C. § 1983.  This section imposes civil liability upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws.  See 42 U.S.C. § 1983.  Section 1983 does not itself provide a source of substantive rights, but instead provides the mechanism by which a plaintiff may seek vindication of federal rights conferred elsewhere.  Graham v. Connor, 490 U.S. 386, 393-94, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989).  Here, Plaintiff's claims are grounded in the First, Eighth, and Fourteenth Amendments.

**A.     Excessive Force and Failure to Intervene**

Plaintiff's first cause of action asserts claims that he was subjected to excessive force by correctional officers in violation of his Eighth Amendment rights on several

separate occasions. "A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components-one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect." Wright v Goord, 554 F.3d 255, 268 (2d Cir. 2009). The core judicial inquiry to be made is not the extent of the injury, if any, but " 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' " Wilkins v. Gaddy, 559 U.S. 34, 130 S. Ct. 1175, 1178, 175 L.Ed.2d 995 (2010) (quoting Hudson v. McMillian, 503 U.S. 1, 7, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992)); see Wright, 554 F.3d at 268-69. Where "a prisoner's allegations and evidentiary proffers could reasonably, if credited, allow a rational factfinder to find that corrections officers used force maliciously and sadistically," summary judgment is improper "even where the plaintiff's evidence of injury was slight and the proof of excessive force was weak." Wright, 554 F.3d at 269.

Nonetheless, not "every malevolent touch by a prison guard gives rise to a federal cause of action," and *de minimis* uses of physical force do not fall within the scope of the Eighth Amendment prohibition against cruel and unusual punishments. Hudson, 503 U.S. at 9; Wright, 554 F.3d at 268. The objective component therefore focuses on whether "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." Wright, 554 F.3d at 268 (internal quotation marks omitted).

Plaintiff first alleges that on November 9, 2007, upon his arrival at Southport Correctional, he was "physically assaulted and restrained in the Draft Room Area" by Defendants Chapman, Deburgomaster, Gilboy, and an unknown officer. (Pl's Aff. St. Undisputed Facts, ¶ 1, Docket No. 115; Pl's Aff. in Opp'n ¶ 4, Docket No. 142.) In support of their motion, Defendants Chapman, DeBurgomaster, and Gilroy each assert that, after

5

Plaintiff's waist chains were removed from him upon his arrival at Southport, Plaintiff "violently lunge[d]" at C.O. DeBurgomaster. (Decl. of Daniel Chapman ¶ 5, Docket No. 124; Decl. of Mark DeBurgomaster ¶ 5, Docket No. 126; Decl. of Timothy Gilroy ¶ 6, Docket No. 129; Def's St. Undisputed Facts ¶ 4, Docket No. 120.) Plaintiff was then "brought to the floor and placed in full restraints by Sergeant Chapman and Corrections Officers Gilboy and DeBurgomaster." (Def's St. Undisputed Facts ¶ 5; see Chapman Decl. ¶ 5; DeBurgomaster Decl. ¶ 5; Gilroy Decl. ¶ 6.) Plaintiff denies these assertions, and states that these defendants "maliciously and sadistically attacked Plaintiff while he was confined in a secured (locked) holding pen without justification." (Pl's St. Opposing Facts ¶ 7, Docket No. 141.) Plaintiff also relies on the testimony of three inmate witnesses who testified on his behalf at a related disciplinary hearing. (Id. (citing Decl. of James Esgrow Ex. A (hearing testimony), Docket No. 127.) Thus, although Plaintiff's resulting injuries consisted of "skin scrapes," (Pl's Mem of Law in Opp'n at 23), which Defendants describe as "small, superficial abrasions on [Plaintiff's] right shoulder and knee," (Def's St. Undisputed Facts ¶ 6; see Decl. of Marshall Trabout, M.D. ¶ 19, Ex I (relevant medical record), Docket No. 136.), there is nonetheless a factual issue whether these Defendants used force maliciously. Wright, 554 F.3d at 269.

The same conclusion cannot be reached with respect to Plaintiff's remaining excessive force claims. Plaintiff further alleges that Defendant Chapman verbally threatened him on January 28, 2008 in retaliation for grieving an alleged assault by unnamed officers on January 18, 2008. (Am. Compl. ¶¶ 10-12.) Chapman allegedly said, "You can't be having other guys fighting your battles for you[,] Brown[,] it's just going to get you in trouble." (Id. ¶ 11.) Defendants correctly argue that verbal threats are generally an

6

insufficient basis for finding an Eighth Amendment violation, particularly where, as here, they are indirect and unaccompanied by either physical force or the present ability to effectuate the threat. Felder v. Filion, 368 Fed. Appx. 253, 256 (2d Cir. 2010) (citing Purcell v. Coughlin, 790 F.2d 263 F.2d 263, 265 (2d Cir. 1986)); Jermosen v. Coughlin, 878 F. Supp. 444, 449 (N.D.N.Y. 1995). Plaintiff does not allege that Chapman was involved in the January 18th assault, and in fact he has provided no additional detail regarding that alleged incident. There is thus insufficient evidence from which a jury could conclude that either of the alleged January incidents constituted violations of Plaintiff's Eighth Amendment rights.

Finally, Plaintiff alleges that he was assaulted "by officers, under the supervision of Sgt D. Chapman" on March 21, 2008 while being transferred to a new housing area. (Am. Compl. First Claim ¶ 18.) No other Defendant is named in connection with this incident. It is unclear from this allegation whether Plaintiff is asserting that Chapman was present and failed to intervene, or if Plaintiff alleges Chapman was responsible by virtue of his status as a supervisor of the unnamed offenders. If the latter, then there are insufficient allegations from which a jury could conclude that Chapman personally participated in the assault, and this claim must fail. Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010) (a defendant's personal involvement in an alleged constitutional deprivation is a prerequisite to damages under § 1983).

With respect to any alleged failure to intervene, Chapman asserts in his declaration that no such assault occurred and that there is no documentary evidence supporting the allegation. (Chapman Decl. ¶ 9.) Defendant Marshall Trabout, M.D., DOCCS' Regional Medical Director, similarly alleged that there are no medical records supporting the

7

allegation that force was used on Plaintiff on that date. (Trabout Decl. ¶¶ 1, 20.) Plaintiff states that the medical records attached to the declaration of Defendant David Napoli reflect such an incident, but there are no records from 2008 to be found there. (Pl's St. Opposing Facts ¶ 14; see Napoli Decl., Docket No. 133.) There are also no medical records from March 2008 among those submitted by Plaintiff in support of his motion.[1] The absence of any further detail regarding Chapman's actions, submitted in admissible form, prevents this Court from interpreting Plaintiff's allegation against C.O. Chapman as a failure to intervene claim. Defendants are therefore entitled to summary judgment on Plaintiff's Eighth Amendment claims, with the exception of the alleged incident on November 9, 2007.

**B.    Force Feeding**

Plaintiff asserts, primarily in his second cause of action, that Defendants violated his constitutional rights by force feeding him during hunger strikes undergone to protest his alleged mistreatment. (Pl's Mem of Law in Opp'n at 10-14.) Specifically, he argues that: (1) he was force fed in violation of his protected liberty interest in refusing medical treatment; (2) the means by which Defendants obtained the court order from state court violated his due process rights; and (3) Defendants' refusal to immediately remove a purcutaneous endoscopic gastroscopy ("PEG") feeding tube,[2] following Plaintiff's consent to eat a kosher diet, violated his Eighth Amendment rights.

Although a prisoner has a right to refuse medical treatment, liability for a

---

[1] Plaintiff's exhibits were manually filed with the Clerk's office.

[2] This is a surgically inserted feeding tube used for long-term use to avoid the daily trauma of inserting a nasogastric tube at each feeding. (Trabout Decl. ¶ 13.)

8

constitutional violation is nonetheless absent unless the prisoner's individual liberty interest outweighs the relevant countervailing state interests. Pabon, 459 F.3d at 252 (citing Turner v. Safley, 482 U.S. 78, 89, 107 S. Ct. 2254, 96 L.Ed.2d 64 (1987)). The Second Circuit has already expressly held that a court force-feeding order does not violate a hunger-striking prisoner's constitutional rights. Grand Jury Subpoena John Doe v. United States, 150 F.3d 170, 172 (2d Cir. 1998) (holding that the "preservation of life, prevention of suicide, and enforcement of prison security, order, and discipline" were significant governmental interests outweighing prisoner's liberty interest).

Further, although the parties do not address this issue, this Court concludes that it does not have subject matter jurisdiction over Plaintiff's arguments on this point under the *Rooker-Feldman* doctrine. Joseph v. Leavitt, 465 F.3d 87, 89 (2d Cir. 2006) (court has obligation to address issue of jurisdiction *sua sponte*), *cert denied*, 549 U.S. 1282 (2007); see generally Dist. of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482–84 n. 16, 103 S. Ct. 1303, 75 L. Ed.2d 206 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415–16, 44 S. Ct. 149, 68 L. Ed. 362 (1923). Pursuant to this doctrine, "[l]ower federal courts lack subject matter jurisdiction in 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.' " McCluskey v. N.Y.S. Unified Court Sys., 442 Fed. Appx. 586, 589 (2d Cir. 2011) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005)), *cert denied* 132 S. Ct. 1553 (2012). In other words, *Rooker-Feldman* recognizes that federal district courts are prohibited from exercising appellate jurisdiction over state-court judgments, inasmuch as Congress has reserved that authority to the

Supreme Court pursuant to 28 U.S.C. § 1257(a).³ McKithen v. Brown, 481 F.3d 89, 96 (2d Cir. 2007), *cert denied*, 552 U.S. 1179 (2008); Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005). For review to be precluded by the *Rooker-Feldman* doctrine, four elements must be met:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must "complain [ ] of injuries caused by [a] state-court judgment[.]" Third, the plaintiff must "invit[e] district court review and rejection of [that] judgment [ ]." Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced"—i.e., Rooker–Feldman has no application to federal-court suits proceeding in parallel with ongoing state-court litigation. The first and fourth of these requirements may be loosely termed procedural; the second and third may be termed substantive.

McKithen, 481 F.3d at 97 (quoting Hoblock, 422 F.3d at 85).

Here, Plaintiff does not dispute that Defendants obtained a court order from a New York State court over his objection prior to initiating the force feeding. See O'Malley v. Litscher, 465 F.3d 799, 803 (7th Cir. 2006) ("carrying out a state court's decision is not an independent violation of the Constitution"). The order was issued after a hearing at which Plaintiff appeared with counsel. (Pl's Exhibits, November 29, 2007 Hr'g Tr. at 1.) Plaintiff argues, however, that Defendants misrepresented certain facts during the hearing in state court, particularly those regarding Plaintiff's weight loss, in order to obtain the order. (Pl's Supporting Mem of Law at 17; Pl's Mem of Law in Opp'n at 10-14.) Plaintiff raised these same issues at the state court hearing. (Pl's Exhibits, November 29, 2007 Hr'g Tr. at 22-

---

³Section 1257(a) provides: "Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where the validity of a treaty or statute of the United States is drawn in question or where the validity of a statute of any State is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, or where any title, right, privilege, or immunity is specially set up or claimed under the Constitution or the treaties or statutes of, or any commission held or authority exercised under, the United States."

32.) The present submission is therefore an invitation for this Court to review the state court's resolution of these issues and offer redress for alleged injuries caused by the state court order. Inasmuch as this would violate the *Rooker-Feldman* doctrine, the Court declines to do so. McKithen, 481 F.3d at 97; Hoblock, 422 F.3d at 83; see O'Malley, 465 F.3d at 803 (*Rooker-Feldman* applies where the plaintiff had an opportunity to raise constitutional challenges to defendants' actions in state court); Walker v. Horn, 385 F.3d 321, 331-32 (3d Cir. 2004) (*Rooker-Feldman* applied where plaintiff's "constitutional claim [was] bottomed on his theory that the prison officials had inadequate procedural safeguards to insure that the state court's ruling would be based upon accurate and complete information"), *cert denied*, 544 U.S. 1021 (2005).

Plaintiff also argues that Defendants should have removed the PEG tube when he agreed to accept kosher meals in August 2008, instead of waiting until April or May of 2009. The Court finds this argument to be a challenge to the scope of the state court's order, which expressly allows the use of a "PEG, or other percutaneous enterostomy tubes, as dictated by the judgment of the treating physicians according to the existing clinical indications and necessity," (Napoli Decl. Ex. B (state court order)), but places no temporal limitation on the exercise of that discretion. Further, Plaintiff's own allegations establish that the decision to postpone the removal of the feeding tube was made by a treating physician,[4] notably one Plaintiff has not named as a defendant. (Am. Compl. Second Claim

---

[4] Even if subject matter jurisdiction did exist, to violate a prisoner's Eighth Amendment rights, there must be evidence of "deliberate indifference to serious medical need of prisoners." Estelle v. Gamble, 429 U.S. 97, 104-05, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). Plaintiff's disagreement with the treating physician's determination, particularly in light of Plaintiff's admitted history of utilizing hunger strikes as a form of protest, is insufficient to establish that any Defendant was deliberately indifferent to Plaintiff's medical needs. See Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998); Frank v. County of Ontario, 884 F. Supp. 2d 11, 18 (W.D.N.Y. 2012).

11

¶¶ 31-32.) Accordingly, "*Rooker-Feldman* [also] bars [Plaintiff's] Eighth Amendment claim that it was of violation of his rights to force-feed him at all since he was willing to eat in response to the state court's order." O'Malley, 465 F.3d at 804 (the state court's determination that force feeding was necessary established defendant's actions were in good faith, rather than malicious, as required for an Eighth Amendment claim); see Walker, 385 F.3d at 331 (doctrine applies where "claim is not a frontal attack on the propriety of the state court order[, but] nevertheless questions the propriety of the state court's order"). Plaintiff's Eighth and Fourteenth Amendment claims related to his force feeding are therefore dismissed due to lack of subject matter jurisdiction.

**C.      Retaliation Claims**

Plaintiff contends that Defendants transferred him to a new housing unit in retaliation for filed grievances, turned off the lights and water to his cell, and subjected him to mistreatment in force feeding in retaliation for his hunger strike in violation of his First Amendment rights. In order to establish a First Amendment retaliation claim under § 1983, a prisoner must show "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Espinal v. Goord, 558 F.3d 119, 128 (2d Cir. 2009). Further, "because prisoner retaliation claims are 'easily fabricated,' and accordingly 'pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration,' we are careful to require non-conclusory allegations." Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003) (quoting Dawes v. Walker, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed.2d 1 (2002)); see Scott v. Coughlin,

344 F.3d 282, 287 (2d Cir. 2003) (conclusory allegations or denials insufficient to defeat otherwise meritorious summary judgment motion).

The filing of a grievance is protected conduct for the purposes of a First Amendment retaliation claim. Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995). Plaintiff further alleges, without elaboration in any of his supporting documents, that his move "from [his] housing area B-1-11 to housing area C-1-15" constituted an adverse action. (Am. Compl. First Claim ¶ 6.) "[T]he validity of a retaliation claim turns not on the atypicality or harshness of an inmate's confinement, but on whether that confinement would deter a similarly situated inmate of 'ordinary firmness' from exercising his constitutional rights." Allah v. Poole, 506 F. Supp. 2d 174, 186 (W.D.N.Y. 2007) (quoting Allah v. Seiverling, 229 F.3d 220, 224 (3d Cir. 2000); see Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003). Thus, a housing transfer may, under certain circumstances, constitute an adverse action. See Poole, 506 F. Supp. 2d at 188-89 (evidence suggesting sergeant harbored some animus against plaintiff for filed grievances sufficient to raise material issue of fact whether seventeen-day transfer to involuntary protective custody was retaliatory).

Here, however, there is no evidence that the conditions in housing area 'C' were different from housing area 'B' such that an inmate of ordinary firmness would be dissuaded from exercising his constitutional rights. Houston v. Horn, No. 09 Civ 801, 2010 WL 1948612, *8-9 (S.D.N.Y. May 13, 2010) (five-day placement in "Close Custody" insufficient to constitute adverse action in absence of evidence that conditions differed from general population housing); Young v. Superintendent Kadien, No. 09-CV-6639, 2010 WL 1909566, *3 (W.D.N.Y. May 7, 2010) (insufficient allegations to support retaliation claim in absence of facts indicating that conditions at new facility were adverse compared

13

to conditions at old facility). As such, Defendants are entitled to summary judgment on Plaintiff's retaliation claim related to the housing transfer.

Further, this Court and the Northern District have each found Plaintiff's assertion that his hunger strikes constitute constitutionally protected speech to be questionable. Brown v. Poole, No. 05-CV-509S, Docket No. 51 at 16-17; Brown v. McGinnis, 05-CV-758S, Docket No. 72 at 7; see Brown v. Graham, No. 9:07 CV 1353, 2010 WL 6428251, *16 (N.D.N.Y. Mar. 30, 2010), *report and recommendation adopted by* 2011 WL 1213482 (Mar. 31, 2011), *aff'd* 470 Fed. Appx. 11 (2d Cir. 2012). Even assuming that the hunger strike is protected speech, Plaintiff does not dispute that he has a history of hunger strikes; that Defendants obtained a court order prior to taking any action with respect to force feeding, or that determinations regarding nasogastric and purcutaneous endocscopic gastroscopy tubes were made by treating physicians. Accordingly, this Court finds that there is insufficient evidence from which a jury could find a causal connection between the actions taken by Defendants and any alleged retaliatory animus on the part of Defendants. See Espinal, 558 F.3d at 128; see also O'Malley, 465 F.3d at 804 (the state court's determination that force feeding was necessary established defendant's actions were in good faith, rather than malicious).

Finally, although Plaintiff alleges that the lights, water, and toilet in his cell were turned off for several days in March 2008 in retaliation for past grievances, he fails to specify which defendant, if any, was allegedly involved. (Am. Compl. First Claim ¶¶ 14-15.) In the absence of any indication that a named defendant was personally involved in this alleged retaliatory act, this claim must be dismissed. Collins v. Ferguson, 804 F. Supp. 2d 134, 137 (W.D.N.Y. 2011); Edwards v. City of New York, No. 07-CV-5286, 2009 WL

1910740, *3 (E.D.N.Y. June 29, 2009).

**D.     Disciplinary Hearing**

To the extent that the Amended Complaint can be read to assert that the hearing officer's preclusion of a witness Plaintiff requested to appear at his disciplinary hearing violated Plaintiff's due process rights, that claim is without merit. (Am. Compl. ¶¶7-8; see Def's Mem of Law at 13-14.) A prisoner's right to call witnesses and present evidence in disciplinary hearings may be denied on the basis of irrelevance or lack of necessity. Kingsley v. Bur. of Prisons, 937 F.2d 26, 30 (2d Cir. 1991)(citing Ponte v. Real, 471 U.S. 491, 496, 105 S. Ct. 2192, 85 L. Ed. 2d 553 (1985)); Wolff v. McDonnell, 418 U.S. 539, 566, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974) (prison officials have discretion to keep hearing within reasonable limits and to refuse to call a witness for irrelevance or lack of necessity).  The burden, however, is not on the prisoner to establish that an official's conduct at a hearing was arbitrary and capricious, "but upon the official to prove the rationality of the position." Kingsley, 937 F.2d at 30-31.

In support of their motion, Defendants submitted the declaration of the hearing officer, James Esgrow, who stated that he precluded one inmate from testifying at the hearing because there was no indication that this witness would provide any non-redundant testimony. (Decl. of James Esgrow ¶¶ 1, 7, 11, Docket No. 127.) Esgrow further states that when questioned, Plaintiff answered that the witness "won't tell [Esgrow] no more than what the other three [witnesses] have already told [him]." (Id. ¶ 11, Ex. A at 18 (disciplinary hearing transcript).)  Plaintiff does not dispute these facts in his submissions, therefore Defendants have established the rationality of the hearing officer's decision, Kingsley, 937 F.2d at 30-31, and they are entitled to summary judgment on this

claim.

## E.     Time Allowance Hearing

Judge Foschio permitted Plaintiff to amend his original complaint to include a claim that the procedure by which his good-time credits were revoked in December 2007 failed to comport with constitutional due process. (June 6, 2011 Decision and Order, Docket No. 69 at 15; Am. Compl. Fifth Claim.) Plaintiff argues that he received inadequate assistance due to his assigned assistant's refusal to obtain requested documentary evidence, including mental health records, that would correct certain erroneous information in his file. (Am. Compl. Fifth Claim ¶¶ 5-8.) Notably, an alleged violation of a prisoner's right to assistance in a disciplinary hearing is reviewed for harmless error. Pilgrim v. Luther, 571 F.3d 201, 206 (2d Cir. 2009); see generally Roston v. Selsky, No. 00 Civ 8994, 2001 WL 1297797, *4 (S.D.N.Y. Oct. 25, 2001) (time allowance committees are part of the disciplinary process). Further, as noted above, a prisoner's right to call witnesses and present evidence in disciplinary hearings may be denied on the basis of irrelevance or lack of necessity. Kingsley, 937 F.2d at 30; Wolff, 418 U.S. at 566.

In support of their motion for summary judgment, Defendants submitted the declaration of John Colvin, the Deputy Superintendent of Security who acted as Time Allowance Committee ("TAC") Chairman in December 2007. (Colvin Decl. ¶ 1, Docket No. 125.) Colvin asserts that according to a Time Allowance-Notice and Assistance Form completed by Plaintiff's designated assistant, Plaintiff did not request any evidence prior to the hearing. (Colvin Decl. ¶ 8, Ex. B.) Colvin further asserts that any further evidence would have been irrelevant, inasmuch as Plaintiff's failure to complete a required anger management program and his refusal to complete a required substance abuse program

each mandated the TAC determination to withhold good time credit. (Id. ¶¶ 9-12.) Plaintiff does not dispute that he has not completed the required anger management program, (Pl's Opposing St. of Facts ¶ 63), thus any further evidence, even if mitigating, would have been irrelevant to the committee's determination, rendering the alleged failure of his assistance harmless. Pilgrim, 571 F.3d at 206; Faulk v. Fisher, No. 09-CV-6377, 2012 WL 2953229, *7 (W.D.N.Y. July 19, 2012) (alleged error in denying prisoner right to appear at TAC hearing was harmless where prisoner had not completed a required aggression replacement training, thereby precluding a determination that he was prejudiced by the error).

## F.      Supervisor Liability

Plaintiff's third cause of action alleges liability on the part of Defendants Fischer, LeClaire, and Napoli for their knowledge of and participation in the constitutional violations alleged in Plaintiff's other causes of action. In light of the conclusions regarding those claims, discussed above, the only claim to be considered here is the alleged November 9, 2007 assault.   Plaintiff alleges only that Defendant Napoli, Superintendent of Southport Correctional Facility, was informed of this assault by way of reports filed by "subordinate staff," Plaintiff's filed grievance, and per requirements of the applicable regulations.  (Am. Compl. Third Claim ¶ 1.) This is insufficient to establish the personal involvement necessary to impose liability under § 1983. Farid, 593 F.3d at 249 (a defendant's personal involvement in an alleged constitutional deprivation is a prerequisite to damages under § 1983). Even if Napoli had affirmed the denial of the relevant grievance following appeal, a fact Plaintiff has not alleged, that alone does not establish the requisite personal involvement. Joyner v. Greiner, 195 F. Supp. 2d 500, 506 (S.D.N.Y. 2002); James v.

17

Poole, No. 06-CV-6007, 2013 WL 132492, *7 (W.D.N.Y. Jan. 9, 2013)

## G. Defendants DOCCS and NYS Office of Mental Health

Plaintiff's fourth cause of action is asserted against only Defendants DOCCS and OMH. Plaintiff alleges that he was subjected to unneeded services over his objection, and denied access to other services, based on Defendants' erroneous perception of him as having a mental impairment. (Am. Compl. Fourth Claim ¶ 1.) This cause of action was liberally construed to state a violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* and the Rehabilitation Act, 29 U.S.C. § 794 *et seq.* upon initial screening pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b). (March 25, 2010 Decision and Order at 6, Docket No. 3.) As developed in his memoranda of law, however, Plaintiff's argument is that, despite being diagnosed as having no mental illness, he was nonetheless transferred and subjected to psychiatric evaluations in retaliation for filing grievances and participating in hunger strikes as discussed above. (Pl's Mem of Law at 2-6; Pl's Mem of Law in Opp'n at 3-4.) In other words, Plaintiff is not asserting that he was discriminated against based on a perceived disability in violation of the ADA, but that Defendants intentionally mislabeled him despite knowing he had no mental impairment. Plaintiff's fourth cause of action is therefore more properly construed as asserting that DOCCS and OMH are liable for monetary damages pursuant to § 1983 for retaliating against Plaintiff in violation of his First Amendment rights. (Am. Compl. Fourth Claim (seeking only monetary damages).) Such a claim must be dismissed because neither DOCCS nor OMH is a person within the meaning of § 1983. Spencer v. Doe, 139 F.3d 107, 111 (2d Cir. 1998) (neither a state nor a state agency is a person within the meaning of § 1983); see Howlett By and Through Howlett v. Rose, 496 U.S. 356, 365, 110 S. Ct. 2430,

110 L. Ed. 2d 332 (1990) (an entity with Eleventh Amendment immunity is not a person with the meaning of § 1983).

## IV. CONCLUSION

With one exception, Defendants have established their entitlement to summary judgment on Plaintiff's claims. There is a material question of fact regarding the alleged assault on November 9, 2007, therefore summary judgment is denied to both parties on that claim. Defendant's motion for summary judgment is otherwise granted, Plaintiff's motion for summary judgment is denied in its entirety, and the Amended Complaint is dismissed with respect to all Defendants except Daniel Chapman, Mark DeBurgomaster, and Timothy Gilboy.

## V. ORDERS

IT HEREBY IS ORDERED that Plaintiff's Motion for Summary Judgment (Docket No. 114) is DENIED;

FURTHER, that Defendants' Cross-Motion for Summary Judgment (Docket No. 119) is GRANTED in part and DENIED in part.

FURTHER, that the Amended Complaint is dismissed with respect to all Defendants except Daniel Chapman, Mark DeBurgomaster, and Timothy Gilboy.

SO ORDERED.

Dated: March 2, 2013
      Buffalo, New York

      /s/William M. Skretny
      WILLIAM M. SKRETNY
      Chief Judge
      United States District Judge